## PHILIP BRADY *vs.* WILLARD BLACKINTON.

The conveyance of a mill and mill privilege, " the high water mark of the dam or pond " being designated, "with the right of flowing" the grantor's "meadows above," does not convey the right to raise the dam to the designated mark; and the dam must be so maintained that the water will not rise above the mark in an ordinary state of the stream, though that state is a swollen one caused by the letting down of water from a reservoir above; but the conveyance does not abridge the grantee's right under Gen. Sts. *c.* 149, to raise the dam, and the grantor's remedy in such case is under the statute and not at common law.

COMPLAINT under Gen. Sts. *c.* 149, charging that the respondent overflowed the complainant's meadow by his mill-dam. The respondent pleaded that he had a right to maintain his dam

without compensation as high as the centre of a hole drilled into a granite stone set in the ground above the dam ; and that the dam had not during the three years preceding the commencement of the suit been raised higher than the centre of the hole.

At the trial in the Superior Court before *Pitman*, J., the petitioner having made out a *primâ facie* case, the respondent put in evidence the deed of George Bliss, conveying to the respondent and his brother William, whose title the respondent had since acquired, " a certain tract of land together with the gunshop privilege thereon, together with all the buildings," bounded by " the pond at high water mark." The deed contained this clause : " The high water mark of the dam or pond belonging to said privilege being " " to the centre of a hole drilled into a granite stone set in the ground." The complainant derived title to the meadow by a subsequent conveyance from Bliss, which contained a warranty against incumbrances, " except the right that William and Willard Blackinton have to raise their factory pond." It appeared that the granite stone was in the same position as when the respondent purchased the mill ; that he had not changed the width of the waste way, and that the factory was in the same condition and position as when Bliss conveyed it. The respondent introduced evidence that his dam had never been raised higher than the centre of the hole ; that in the ordinary stage of the water the mill-pond was never higher ; that it was not practicable in an ordinary stage of the water to raise it higher ; but that in the summer in extreme freshets the water was occasionally three or four inches higher ; and that the mill-pond was very small and easily and quickly affected by rains.

The complainant testified that the dam was sometimes raised higher by boards put on. He also put in evidence another deed from Bliss to the respondent and his brother William, of the same date with the deed put in by the respondent, wherein Bliss granted ᵗ unto the said William and Willard, their heirs and assigns, the right and privilege of flowing my meadows or lands adjoining Bungay River, and situated on the westerly side thereof above the dam of the trip-hammer shop (so called), by the means of said dam," " the said grantees to draw down the pond below high

water mark during every day, and to raise the same during the night at their discretion as high as they may please, with the privilege of unlimited flowing of said premises during the winter season, from the first day of November till the twentieth day of April annually ; but subject during the remainder of the year to the condition of not injuring the growth of cranberries thereon, and giving the said Bliss, his heirs and assigns, sufficient time and opportunity in the proper season to gather the crops of hay or fruit on the premises."

The respondent thereupon contended that both deeds, construed together, constituted an agreement which was intended by the parties to settle their respective rights in regard to flowage, as a substitute for the legal process by complaint under the mill act, and that the remedy of the complainant, if any wrong was done him by flowing his meadow, was at common law, and not by complaint under that act. The complainant contended that the second deed was not intended to, and did not, definitely settle the respondent's rights, and did not deprive him of his right to flow under Gen. Sts. *c.* 129, above the high water mark, and did not take away the remedy by complaint under the statute ; that the right granted in the deed was an easement only, in the meadow; that there was no covenant or agreement on the part of the respondent to surrender his privilege to flow under the mill act, and that he, the complainant, must seek his remedy for flowage by complaint and not at common law.

The presiding judge, being of opinion that upon the foregoing facts the complaint could not be maintained, instructed the jury as a matter of law to return a verdict for the respondent, and by consent of parties, reported the case to this court. If there was error in the ruling, the verdict was to be set aside and a new trial had ; otherwise the verdict was to stand, and such further proceedings were to be had as the statute provides.

*J. Daggett*, for the complainant.

*E. Ames*, for the respondent.

MORTON, J. The mill acts give to any owner of a mill the right to erect and maintain a dam subject to the regulations contained therein. Among these regulations are provisions, that the

height to which the water may be raised and the length of time for which it may be kept up in each year, shall be liable to be restricted and regulated by the verdict of a jury ; that any person whose land is overflowed or injured by such dam may obtain compensation upon a complaint to the Superior Court to be entered and conducted as provided by the statute; and that no action, except such complaint, shall be sustained at common law for the recovery of such compensation or damages. Gen. Sts. c. 149, §§ 1–3, 31.

If, by proceedings under the mill acts, the height of his dam has been fixed by the verdict of a jury, the owner's right under the statute is exhausted, unless by some change in his mill or machinery, requiring a greater head of water, he acquires a right to raise it under the twenty-ninth section.

If, in violation of such verdict, he builds his dam higher than the limits fixed by it, he is a wrong-doer and liable to an action of tort at common law. *Leonard* v. *Wading River Reservoir Co. ante*, 235.

The same results follow if the height of his dam is fixed by an award, which is equivalent to a verdict ; *Winkley* v. *Salisbury Manufacturing Co.* 14 Gray, 443 ; or by an agreement clearly intended as a substitute for proceedings under the mill acts. *Burnham* v. *Story*, 3 Allen, 378. *Knapp* v. *Douglas Axe Co.* 13 Allen, 1.

But unless the height of his dam has been conclusively fixed by a verdict, an award or a binding agreement, he has the right under the statute to adapt his dam to the needs of his mill, and to build it to such height as he pleases, subject to the liability to pay damages, and to have a jury fix the height at which it may be maintained by proceedings under the statute.

In the case at bar there has been no verdict or award fixing the height of the respondent's dam, and the principal question is whether the deeds under which he claims are to be construed as constituting an agreement on his part to surrender his privileges under the statute, and to abide by the height of the dam fixed in them. This is a vital question, for, if the deeds do not constitute such a binding agreement, it follows that if the respondent has

raised his dam above the height permitted by the deeds, the complainant could not maintain an action of tort at common law therefor, but it would be a conclusive answer to such action for the respondent to set up that the statute authorized him to raise his dam as his necessities required, and provided an exclusive remedy by a complaint.

The two deeds from George Bliss to the respondent and his brother are dated January 28, 1848, are part of one transaction, and are to be construed together. One deed conveys to the grantees " a certain tract of land with the gunshop privilege thereon, together with all the buildings ; " it gives the bounds of the land, one of which is " the pond at high water mark," " the high water mark of the dam or pond belonging to said privilege," being " the centre of a hole drilled into a granite stone set in the ground." The other deed conveys to the same grantees " the right and privilege of flowing my meadows or lands adjoining Bungay River, and situated on the westerly side thereof above the dam of the trip-hammer shop (so called), by the means of said dam," with certain restrictions which it is not necessary to specify. These deeds are simply a grant of the right to flow to a fixed limit. They contain no words restricting the right of the grantees to flow further. Such right is derived from the statute, as incident to the ownership of the mill, and is not to be taken away except by some positive agreement or necessary implication. *Knapp* v. *Douglas Axe Co.* 13 Allen, 1.

We are of opinion, therefore, that those deeds do not affect the respondent's statutory right to raise his dam so as to flow above the mark fixed by them.

It follows from these considerations that if the respondent has raised his dam, either by a permanent structure or by flashboards, so as to flow higher than his grant permits, the only remedy of the complainant is by a complaint under the statute. Whether he has done so or not is a question of fact, upon which there was conflicting evidence, and that question should have been submitted to the jury. If they find that he has not, then the com plainant cannot maintain his suit ; if they find that he has, then a warrant should issue for a jury to hear and determine the nat-

ure of the complaint, who may determine the height at which the respondent may maintain his dam above the height fixed by his grant, and assess tne damages sustained by the complainant by reason of the flowing by the respondent beyond the extent to which he had a right to flow by his grant. *Ballard* v. *Ballard Vale Co.* 5 Gray, 468. *Jackson* v. *Harrington,* 2 Allen, 242. *McClellan* v. *Fisher,* 16 Gray, 185. *Gordon* v. *Saxonville Mills,* 14 Allen, 219.                    *Verdict set aside.*

After the verdict had been set aside, the case was heard in the Superior Court by *Allen,* J., without a jury.

It was testified by the complainant and by several witnesses called by him that the water in the respondent's pond in the summer season of each year, within the three years next before the filing of the complaint, had been raised a considerable number of times, from four and a quarter inches, at one or more times, to about one inch and a half at others, above the centre of the hole in the granite stone, but neither the complainant nor any of the witnesses testified that the dam itself had ever been raised higher than the centre of the hole.

The respondent and two other witnesses testified that the water had never on any occasion, within the three years, been raised higher than the centre of the hole, except on the occasion of a freshet, or of the unexpected letting down of water from a large reservoir above, used to supply large mills below with water that passed through the pond; that the dam was and always had been at the exact height of the centre of the hole and no higher, so that the water in an ordinary stage of the stream was raised no higher; that the water in the pond had for short intervals been raised higher than the centre of the hole, upon occasions of a freshet, or of the unexpected letting down of water from the reservoir, but that the defendant, immediately after notice of such freshet or of such letting down, lowered his dam below the centre of the hole, and as soon as possible brought the water in his mill-pond down as low as the centre of the hole; that the height of the dam was regulated by flashboards; and the water was never allowed to run over the dam when the flashboards were on.

The court found as a matter of fact, that the water in the respondent's pond had been raised above the high water mark many times when there had been no freshets and no unusual letting down of water from the reservoir.

The respondent contended that by the true construction of the deed from Bliss he was entitled to maintain the dam as high as the centre of the hole, and to flow at all times as high as his dam kept at that height might cause the water to rise in his pond; but the court ruled as a matter of law, that by the proper construction of the deed, the respondent had no right to raise the water so that it should flow higher than to the centre of the hole, to which ruling the respondent excepted.

The respondent admitted that on occasions of freshets and of letting down water from the reservoir above to the mills below, which was a matter that he had neither control over nor previous notice of, the water was for a short time and several times each year raised above the centre of the hole, but contended that he was not liable for a raising of the water caused by freshets and by its letting down from the reservoir while his dam continued no higher than the centre of the hole, and the court ruled that the respondent was not liable on account of high water occasioned by freshets, but that though his dam itself was no higher than the centre of the hole, yet if the dam in consequence of the ordinary letting down of water from the reservoir caused the water to be raised higher than the centre of the hole, when the water would not be raised higher than the hole but for the reservoir, yet he would be liable, if damage were occasioned thereby to the complainant. The court found for the complainant, and the respondent alleged exceptions, which were argued at October term, 1874, by

*E. Ames*, for the respondent.

*H. J. Fuller & J. Daggett*, for the complainant.

MORTON, J. The deed of George Bliss, under which the respondent claims, conveys "a certain tract of land with the gunshop privilege thereon," and fixes the limit to which the grantees shall have the right to flow by the following provision, " the high water mark of the dam or pond belonging to said privilege being '

"to the centre of a hole drilled into a granite stone set into the ground." The respondent contends that this gives him the right to maintain his dam at the height of the centre of the hole, though it may cause the water to flow higher. But we are of opinion that the provision will not reasonably bear this construction. It does not provide that the top of the dam may be as high as the centre of the hole, but that that point shall be the high water mark of the dam or pond. The "high water mark" means the highest point to which the dam will raise the water in the ordinary state of the stream. *Winkley* v. *Salisbury Manufacturing Co.* 14 Gray, 443. The ruling of the Superior Court upon this point was correct.

It appeared at the trial that there was a reservoir, not owned or controlled by the respondent, on the stream above his dam, and the only other exception was to a ruling of the presiding judge, that if the dam in consequence of the ordinary letting down of water from the reservoir caused the water to be raised higher than the centre of the hole in the granite stone, when the water would not be raised higher than said hole but for the reservoir, the respondent would be liable if damages were occasioned to the complainant thereby. We are of opinion that this ruling was correct. The right granted to the respondent was to raise the water to the point fixed in the deed. Although he might not be liable if it was raised higher by freshets or other extraordinary causes, he is clearly bound to keep his dam so that it shall not raise the water to a higher point, in the ordinary state of the stream. The fact that the natural flow of the stream is affected by the ordinary use of the reservoir above, cannot enlarge his rights against the complainant. *Bates* v. *Sloan*, 5 Allen, 178.

*Exceptions overruled.*