AMBROSE W. ISELE *vs.* THEODORE SCHWAMB.

Middlesex. March 2. — July 5, 1881. ENDICOTT & DEVENS, JJ., absent.

Pending a complaint under the Gen. Sts. c. 149, for flowing land by a mill-dam, the parties entered into an agreement under seal by which all past and future claims for compensation for flowage were released, and the complaint was entered "neither party." After the entry of the complaint, and before the execution of the agreement, the complainant mortgaged his land; the mortgage was subsequently foreclosed and the land sold. *Held*, that the purchaser could not maintain a complaint under the mill act, although neither he nor the mortgagee had knowledge of the agreement when each acquired his title.

COMPLAINT filed December 27, 1879, under the Gen. Sts. c. 149, for flowing with the defendant's dam a parcel of land in Arlington owned by the complainant since March 24, 1879. The case was submitted to the Superior Court, and, after judgment for the respondent, to this court on appeal, on agreed facts, in substance as follows:

The respondent is now, and has been for fifteen years prior to the filing of the complaint, the owner of the mill and dam therein described; and during said fifteen years has by his dam caused the water to overflow the land now owned by the complainant.

On August 16, 1873, Charles F. Sippell and Hugo A. Sippell, who were the owners in fee of the premises described in this complaint, brought a complaint against the respondent for flowing these premises by the same dam now complained of. That complaint was duly entered in the Superior Court. While it was pending, on December 15, 1873, the complainants and the respondent entered into an agreement under seal, which provided that the complainants should make certain changes in the course of the stream on which the dam was situated, and that the respondent should put a bank wall by the side of it, on the complainants' land, six inches above high-water mark, so that the complainants might fill their land above the water level; fixed the height at which the respondent could for the future maintain his dam, and released him from all damages, past and future, for maintaining it at the agreed height; and further provided that, when the respondent had performed the agreement on his part, the action pending should be entered " neither

party." The respondent fully performed the agreement on his part; the entry of "neither party" was made in the pending action; and the respondent has not since kept his dam above the height fixed in the agreement.

On October 1, 1873, the Sippells conveyed said premises to the Arlington Five Cents Savings Bank, by a mortgage deed duly recorded before December 15, 1873. The above agreement was executed without the consent or knowledge of the mortgagee; and the respondent had no actual knowledge of the existence of the mortgage. The Sippells continued to occupy the premises until June 6, 1876, when the mortgagee entered for breach of condition and foreclosed the mortgage; and, under a power of sale therein, sold and conveyed the premises to Adam Lodge, who on the same day reconveyed them to the bank. On March 24, 1879, the bank, having made no claim against the defendant for flowage, conveyed the premises to the plaintiff, who was seised in fee of the premises at the date of filing his complaint. The alterations provided for and made under said agreement remain to the present time.

The respondent contends that said agreement is a bar to all claims for damages for flowing the land. The complainant contends that he is not bound by the agreement, as it was made subsequently to the mortgage, under the foreclosure of which he derives a title paramount to any interest in the premises acquired by the defendant.

If the action could not be maintained, judgment was to be entered for the respondent; if the agreement and the acts done under it constituted no defence, the case was to stand for trial.

*J. H. Hardy*, for the complainant.

*J. G. Abbott*, (*S. A. B. Abbott* with him,) for the respondent.

LORD, J. The claim of the complainant is based upon an erroneous view of what estate is conveyed by the mortgage deed of Charles F. and Hugo A. Sippell to the Arlington Five Cents Savings Bank, of October 1, 1873. A reference to the agreed facts discloses precisely what that deed conveyed. The respondent for some fifteen years prior to that deed had been the owner of a mill and mill-dam, which mill-dam had held back the waters of the stream across which it was built so as to overflow the land of the said Sippells. That dam was then, and

during the whole time had been, of the same height at which it has since been maintained. The dam was lawfully erected, and has since been lawfully maintained under the statutes of the Commonwealth relating to mills. By force of law, therefore, the respondent became seised of the right to flow the land now owned by the complainant, as it would be flowed by the maintenance of the dam. That right was acquired by force of law, and the estate of the Sippells became subject to it. They could not destroy nor defeat nor impair it. It was a perpetual servitude, to which their land was subject. *Heard* v. *Middlesex Canal*, 5 Met. 81. *Sudbury Meadows* v. *Middlesex Canal*, 23 Pick. 36. *Heard* v. *Talbot*, 7 Gray, 113. *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152.

Such right having been acquired by the respondent in the land of the Sippells, they could not by any act or deed deprive him of the right, nor could they convey their land to the bank or to any other grantee except subject to it. The right which they possessed to compensation for the injury which the taking of their property for a public use occasioned them was a right to recover money, which would not pass by their deed of mortgage, even though the other facts which are agreed did not exist.

On August 16, 1873, and before the mortgage to the Arlington Savings Bank, the Sippells were the owners of the land unincumbered except by such servitude. They then had the right to demand and receive such satisfaction for the injury sustained by them as the law warranted. The only claim which they had the means of enforcing by law was a claim for compensation in money. *Seymour* v. *Carter*, 2 Met. 520. *Clement* v. *Durgin*, 5 Greenl. 9. *Cobb* v. *Fisher*, 121 Mass. 169.

As between themselves and the respondent, they could adjust the matter in any mode satisfactory to the parties. They might release all their damages, under their seals, without any compensation. They might agree to release the damages upon the respondent agreeing to make certain improvements upon or changes in the condition of his land, or they might agree upon a sum to be paid annually to them for the injury done to their land, or might have accepted a gross sum in full satisfaction for all the damages sustained or to be sustained by them in consequence of the perpetual servitude of their land, or they could

pursue the remedy which the statute provides by petition to the Superior Court for the assessment by a jury of the damages sustained by reason of the injury to their land, in the manner provided by law. They adopted the last mode, apparently for the purpose of preparing the way for negotiation in some of the other modes. If the proceedings instituted had gone on, and their money damages had been assessed by a jury, the jury would have been required to find by their verdict what sum to be paid annually would be a just and reasonable compensation for the damages thereafter occasioned so long as the land was used in conformity with the verdict; and also what sum in gross would be a just and reasonable compensation for all the damages sustained and to be sustained by such use of the dam, and for the right of maintaining and using the same forever, in such manner. Gen. Sts. c. 149, § 20. And by § 21 of the same chapter, the Sippells would have the right at any time within three months after the acceptance and recording of such verdict to elect to take the gross sum so awarded in full satisfaction for all the damages sustained or to be sustained by the reason of the flowing of that land forever.

Such process having been commenced by them on August 16, 1873, they were entitled to all the fruits of that proceeding. The rights were fixed as of that date. If they had alienated absolutely their estate upon the next day, their right to the entire compensation for the right to maintain the dam forever would have been fixed and vested. That right accrued the day the dam was erected. The question as to the mode of compensation, whether in gross for all the damages or whether annually forever, was merely a matter of convenience, and had no reference at all to the nature or the duration of the taking. The taking was for a public use for an indefinite time, and therefore in law perpetual; and the true theory of the Constitution, as it has been expounded, is that, when private property is taken for public use with one hand, full and complete compensation therefor shall be tendered with the other. The right to the compensation is simultaneous with the act of taking; and where the taking is of a mere servitude, that servitude is engrafted upon the estate, and the estate is forever subject to it, into whatever hands it may go, while the value of such servitude is a

mere money claim of the owner of the estate upon which it is engrafted against him who creates the servitude.

From these considerations, it is obvious that the particular mode in which that proceeding was terminated is immaterial, if it resulted in a settlement of the gross damages which the taking created. If we were looking to the equities of the case, it would be interesting to observe that the mode of settlement adopted by the parties, instead of the payment and receipt of money, was an attempt by the joint action of both the parties to restore the land to such condition that, as land, it would be as valuable as before the injury done to it. But we are not dealing with the equities, but with the common-law rights of the parties; and it will be found that at common law the mortgagor is as to all the world, except the mortgagee, the owner of the estate, and that when land previously mortgaged is taken for a public use, at law the mortgagor is the person entitled to the compensation. *Breed* v. *Eastern Railroad,* 5 Gray, 470, note. *Farnsworth* v. *Boston,* 126 Mass. 1. If, however, this were otherwise, in this case, before the mortgage was executed, the right of the respondent to the easement was vested, as was the right of the Sippells to compensation; and their adjustment is final and conclusive. *Judgment affirmed.*