PHILIP E. BRADY, executor, *vs.* HARRIET A. BLACKINTON.

Bristol.    October 23, 1899. — November 29, 1899.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Flowage — Mills — Construction of Writing — Action.*

In order to maintain an action at common law for flowing land it is necessary for the plaintiff to show that the height of the defendant's dam has been fixed by a verdict or an award, or an agreement clearly intended as a substitute for proceedings under the mill act, Pub. Sts. c. 190.

After it had been determined that the respondent in a complaint for flowing land had an easement under the mill act, he filed a paper, not under seal, stating that he "now utterly and forever refuses to have thrust or forced upon him and utterly disclaims any right whatsoever of raising the water" above the limit named in the deed to him. An order for a sheriff's jury to assess damages was stricken off, and afterwards the parties made an agreement of compromise which was shortly carried out, and the case was disposed of by the entry of "neither party." It did not appear that the complainant ever accepted the disclaimer, or in any way agreed to it, or that the subsequent settlement was based upon it. *Held,* in an action of tort by the former complainant against the successor of the former respondent for flowing the same land, that the paper so filed by the respondent did not appear to be an agreement which was intended as a substitute for proceedings under the mill act.

TORT, brought originally by Philip Brady, and, after his decease, prosecuted by the executor of his will, for flowing certain lands of the testate in Attleborough. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

The defendant claims by mesne conveyances under two deeds from George Bliss to William Blackinton and Willard Blackinton, each dated January 28, 1848, and the first of which conveyed " a certain tract of land with the gun-shop privilege thereon, . . . bounded as follows . . . by the pond at high water mark . . . the high water mark of the dam or pond belonging to said privilege being . . . to the centre of a hole drilled into a granite stone set in the ground " ; and the second of which conveyed " the right and privilege of flowing my meadows or lands adjoining Bungay River, and situated on the westerly side thereof above the dam of the Trip Hammer Shop (so called) by the means of said dam in the manner and at the times following, viz. : The said Grantees to draw down the Pond below high water mark during every day, and to raise the same during the night at their discretion as high as they may please, with the privilege of unlimited flowing of said premises during the winter season, from the first day of November till the twentieth day of April annually, but subject during the remainder of the year to the condition of not injuring the growth of cranberries thereon, and giving the said Bliss, his heirs and assigns, sufficient time and opportunity in the proper season to gather the crops of hay or fruit on the premises."

This action is brought for raising the water of the defendant's pond above the high-water mark named in such deeds, and thereby flooding the plaintiff's meadow lands above.

At the March, 1873, term of the Superior Court Philip Brady filed a complaint under the mill act against Willard Blackinton, the then owner of the defendant's premises, for flowing the same premises described in the present action.

It was contended in defence to that complaint that, under the proper construction of the deeds, the respondent had no right under the mill act or otherwise to flood above the high-water mark named in the deeds, and that the complaint could not be maintained, but that the only remedy was by an action of tort. The Superior Court so ruled, and reported the case to the Supreme Judicial Court. See 113 Mass. 238. It was determined that the deeds did not affect the respondent's statutory right to raise his dam so as to flood above the mark fixed by them, and that the complaint under the mill act was properly brought;

and after further hearings on the complaint, and on exceptions in this court, an order was passed on December 15, 1874, renewed on March 9, 1875, and again on July 3, 1875, for a sheriff's jury to assess the damages.

On October 11, 1875, the respondent filed a paper, reciting that he "now utterly and forever refuses to have thrust or forced upon him and utterly disclaims any right whatsoever of raising the water in said mill pond" above the limit named in the deeds to him, and on October 12, 1875, the order for a sheriff's jury was stricken off. On May 16, 1876, the parties made the following agreement: "It is agreed that the case of Philip Brady, complainant, against Willard Blackinton be compromised as follows, viz.: — The said Blackinton shall pay the said Brady for damages to date the sum of three hundred dollars and shall also pay one half the costs of Court, as paid to the Clerk of the Court, and the case shall be entered Neither Party." These sums were paid, and at the June term, 1876, the entry of "Neither Party" was made.

At the present trial the defendant denied that she had raised the water in her pond above the high-water mark or flowed the plaintiff's premises, except as authorized by the deeds; but she did not set up or claim that she had flowed the plaintiff's premises under the mill act.

The defendant contended, and asked the judge to rule, that if she had raised the waters in her pond above the high-water mark, and flowed the plaintiff's premises at any time and in any manner not authorized by the deeds, the plaintiff's only remedy was by complaint under the mill act; and that this action could not be maintained. The judge so ruled, and directed the jury to return a verdict for the defendant; and the plaintiff alleged exceptions.

*H. J. Fuller*, for the plaintiff.

*W. H. Fox*, (*F. I. Babcock* with him,) for the defendant.

HAMMOND, J. In order to maintain this action at common law it is necessary for the plaintiff to show that the height of the defendant's dam has been fixed by a verdict, or an award or an agreement clearly intended as a substitute for proceedings under the mill act. Pub. Sts. c. 190, §§ 1, 4, 28. *Leonard* v. *Wading River Reservoir*, 113 Mass. 235. *Brady* v. *Blackin-*

*ton*, 113 Mass. 238. The plaintiff concedes that there has been no verdict nor award, but he contends that the height to which the defendant had a right to flow under the mill act as well as under the deeds was fixed and determined by the paper filed by the predecessor in title of the defendant in the case of *Brady* v. *Blackinton, ubi supra.* That was a complaint under the mill act in which the defence claimed that the defendant, under the deeds to him or otherwise, had no right to flow above the high-water mark named in the deeds. The court decided otherwise, and July 3, 1875, an order for a sheriff's jury to assess damages was passed.

On October 11, 1875, the respondent filed the paper in which he says he "now utterly and forever refuses to have thrust or forced upon him, and utterly disclaims any right whatsoever of raising the water" above the limit named in the deeds to him. The order for the jury was "stricken off" the next day, and on May 16, 1876, the parties made the agreement of compromise which was shortly carried out, the case being disposed of by the entry of "Neither Party."

In the first place the paper does not purport to be an agreement. Its language would seem to imply that the respondent did not expect an agreement, for he speaks of having the easement under the mill act "thrust or forced" upon him. He had been beaten in his defence upon the question of liability; the court had ruled that he had an easement under the mill act, and he was about to face a jury upon the question of damages for that easement. He could not avoid his responsibility for the value of that easement without the consent of the complainant. The paper could not have the effect of depriving the complainant of a right which the court had just decided he had.

Nor was it a conveyance of the easement which the respondent had under the mill act, for it was not under seal. *Dyer* v. *Sanford*, 9 Met. 395. *Isele* v. *Schwamb*, 131 Mass. 337.

Nor does it appear that the complainant ever accepted the disclaimer, or in any way agreed to it, or that the subsequent settlement was based upon it.

*Exceptions overruled.*