SAMUEL J. LOMBARDI & another *vs.* DONALD M. BAILEY & another.

Bristol.    October 30, 1957. — January 8, 1958.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Dam. Mill Act. Damages,* For flowing land. *Practice, Civil,* Auditor: summary of evidence, admissibility of evidence, recommittal.

An auditor whose findings were to be final, upon the filing of objections asserting that certain findings were not supported by the evidence, together with a request for summaries of evidence under Rules 89, 90

of the Superior Court (1954) to enable the court to determine the sufficiency of the evidence, should have summarized merely enough evidence respecting each disputed finding to show that it was adequately supported, and should not have summarized "all the pertinent evidence" including evidence irrelevant to the issues raised by the objections. [591]

In a proceeding for assessment of damages for flowing of land under the mill act, G. L. (Ter. Ed.) c. 253, it is contemplated by § 3 that the height at which the water may be maintained shall be found unless it appears that the height may be adequately established by reference to actual conditions at the time of the assessment of damages. [592]

Evidence summarized by an auditor in a proceeding for assessment of damages for a flowing of land under the mill act, G. L. (Ter. Ed.) c. 253, could not be said not to warrant his finding that there was no benefit to the petitioner to be set off against the damages caused by the flowing. [593]

The propriety of admission of evidence by an auditor whose findings were to be final was not open in this court where, although there was objection to the evidence at the hearing, no written objection respecting the matter was later brought in pursuant to Rules 89, 90 of the Superior Court (1954). [594]

A finding by an auditor of the amount of the annual damage sustained by a landowner by a flowing under the mill act, G. L. (Ter. Ed.) c. 253, could not be pronounced unsupported by certain evidence summarized by the auditor, nor was it to be assumed on the record that he had applied a wrong measure of damages although his finding did not state in terms that such amount represented the reduction in annual rental value caused by the flowing. [595]

There was no abuse of discretion in failing to recommit, for more adequate subsidiary findings, the report of an auditor whose findings were to be final where the findings, although meager, could not be said to be inadequate to permit a decision of the case. [595]

A cause of action for flowing of land under the mill act, G. L. (Ter. Ed.) c. 253, did not arise until the flowing began even though the dam causing it was erected before that time. [596]

Evidence in a proceeding for assessment of damages for flowing of land under the mill act, G. L. (Ter. Ed.) c. 253, could not be said to leave the matter of damage to a part of the land not completely flooded conjectural or to be insufficient in law to support findings made as to that matter. [596–597]

PETITION, filed in the Superior Court on October 22, 1948.

The case was heard by *Smith,* J., on the report of an auditor whose findings were to be final. A motion by the respondents to recommit to the auditor was denied. A motion by the petitioners for judgment on the auditor's report was allowed. The respondents alleged exceptions.

In this court the case was submitted on briefs.

*Boyd A. Iseminger & Eben G. Townes*, for the respondents.

*Thomas W. Prince & Talbot T. Tweedy*, for the petitioners.

CUTTER, J.  This is a proceeding under G. L. (Ter. Ed.) c. 253, §§ 4, 8, 10, 39 (the mill act), to recover damages for the flowing of the petitioners' land by a dam maintained on the respondents' land in order to flood the respondents' cranberry lands.  The case was referred to an auditor whose findings of fact were to be final.  The auditor (who had not been instructed to report evidence) submitted a report which summarized all the evidence (seventy-two printed pages in the record) and made meager subsidiary findings (covering less than two pages in the record).

The auditor found the following facts.  The petitioners have owned since May 15, 1945, land which on September 1, 1947, was dry and was suitable and used for raising hay at the rate of three and one half tons per acre.  About September 1, 1947, the respondents built on their land adjoining the petitioners' land a dam across a brook.  The reservoir of water thereby created on the respondents' land has been used since 1947 in the operation of the respondents' cranberry bog, with the result that thirty acres of the petitioners' land were "flooded in places at times, and the whole of said tract . . . continues to be so saturated with water that its productivity . . . is impaired and . . . reduced to two tons of hay per acre"; that another parcel containing about twenty-four acres "was also affected . . . and rendered useless for agricultural purposes"; and that no part of the petitioners' land received benefit from the dam.  The auditor assessed damages within the three years preceding the filing of the petition on October 22, 1948, at $14,000, and determined (a) "the amount to be paid annually . . . to the petitioners as just and reasonable compensation for the damages that may hereafter be caused by the . . . use of said dam and reservoir so long as . . . used in conformity with . . . [his] findings of fact . . . to be $2,000," and (b) "that $25,000 is a just and reasonable compensation in gross for all damages which may hereafter be caused to the

petitioners' . . . land by . . . the . . . use of" the dam and reservoir.

To the report containing these scanty findings, the respondents filed objections asserting that the evidence was insufficient (a) to support the several findings, (b) to enable the auditor to determine how much of the flooding was due to causes other than the dam, (c) to permit the auditor to find that the dam was built in 1947, and (d) to enable him to find the condition of the petitioners' land before the dam was built. Each of these objections of the respondents requested the auditor to append to his report a "brief, accurate, and fair summary" of the evidence necessary to enable the court to determine whether the evidence was sufficient to support the findings. See Rules 89 and 90 of the Superior Court (1954).[1] The auditor did not append to his report any such summaries but merely attached to it the respondents' objections. The respondents also objected that there were no findings by the auditor as to the difference, if any, between the fair rental value of the petitioners' farm before and after the erection of the dam or as to the "height . . . at which the respondents may maintain the water in the future."

The respondents filed a motion to recommit the case to the auditor "for . . . correction of the errors stated in" the respondents' objections and "with instructions to report the evidence to which the objections relate." This motion was denied and a motion for judgment for the petitioners on the auditor's report was allowed. The respondents duly saved their exceptions to these actions. The case is here on the respondents' bill of exceptions.

1. In the absence of an order of the court, an auditor should not report evidence. *Shaw* v. *United Cape Cod Cranberry Co.* 332 Mass. 675, 678–680. However, an auditor whose findings of facts are to be final may be required under Rules 89 and 90 of the Superior Court (1954), if the proce-

---

[1] It is stipulated that Rule 90 was complied with in all respects. The evidence was taken by a stenographer approved by the auditor in accordance with Rule 90.

dure provided by those rules is complied with strictly, to report "a brief, accurate and fair summary of so much of the evidence as shall be necessary" to determine a "question of law which depends upon evidence not reported." Even then, where the question is whether there was evidence to support a particular finding, it is sufficient and preferable that the auditor merely summarize enough of the evidence to establish that there was sufficient evidence to support the finding. *Morin* v. *Clark*, 296 Mass. 479, 483. Here there has not been compliance with the letter of Rules 89 and 90 for, instead of attaching to his report summaries of so much of the evidence as would show that each disputed finding had adequate support, the auditor recited in narrative form "a summary of all the pertinent evidence," including much that seems irrelevant to the issues raised. In view of the delays which already have taken place in this case and of the apparent acceptance of this highly irregular report by the parties (see footnote 1, *supra*), we have undertaken to review the questions of law presented upon the summary of all the evidence contained in the report even though separate summaries of the evidence relevant to each objection have not been prepared, as called for by the rules. Certainly it is not prejudicial to the respondents to have all the evidence summarized. Compare *Morin* v. *Clark*, 296 Mass. 479, 483, where, because the master's subsidiary findings were "in such . . . detail that they might constitute such summaries," this court felt itself unable to say that there was not compliance.[2]

2. General Laws (Ter. Ed.) c. 253, § 3, provides that

---

[2] This court, however, in the *Morin* case, did not "commend this method of complying." In the present case, the auditor's report would have been more useful and informative, and the length of the record (and the difficulties of reviewing it) very much reduced if he (a) had made wholly adequate subsidiary findings, preferably accompanied by a plan of the premises to make the findings intelligible, and (b) had reported no evidence except in the brief summaries of portions of the evidence called for by Rules 89 and 90, thus accomplishing one of the principal purposes of his appointment, the simplification and condensation of the record. See *Lunn & Sweet Co.* v. *Wolfman*, 268 Mass. 345, 350–351. It would have been very much preferable if the trial judge had promptly recommitted the report for more adequate findings and summaries complying with Rule 90. See *Minot* v. *Minot*, 319 Mass. 253, 257–260.

"The height to which the water may be raised . . . may be determined by jury." See also § 9. The petition prays that the dam be removed or that "the height at which it may be maintained in the future" be fixed. The auditor has not done this. The decided cases shed little direct light upon whether § 3 is to be construed as requiring a finding of the height, or is merely permissive. See *Leonard* v. *Wading River Reservoir Co.* 113 Mass. 235, 237; *Brady* v. *Blackinton,* 113 Mass. 238, 241; *Atkins* v. *Witherell,* 142 Mass. 482, 485–486; *Brady* v. *Blackinton,* 174 Mass. 559, 561–562. See also *Wolcott Woollen Manuf. Co.* v. *Upham,* 5 Pick. 292, 294–295; *Cary* v. *Daniels,* 8 Met. 466, 483; *Hill* v. *Sayles,* 12 Met. 142, 148–149. Compare *Murdock* v. *Stickney,* 8 Cush. 113, 118; *Duncan* v. *New England Power Co.* 250 Mass. 228, 231–233. In *Paine* v. *Woods,* 108 Mass. 160, 174, it was said that damages (and benefits by way of set-off) under the mill act "are all estimated upon the theory that the dam will be kept up to the height contemplated . . . at the time of its erection." Here, however, there is no finding establishing the level of flow which was contemplated or that which has taken place. It is important for various reasons to have a precise fixing of the maximum height at which the water above the dam may be maintained, as, for example, in case an action of tort is brought to recover for a flowing beyond the height set (see *Brady* v. *Blackinton,* 174 Mass. 559, 561–562) or, perhaps, if later the height of the dam is properly increased (see *Howe* v. *Ray,* 113 Mass. 88, 90–91) and additional damages are to be assessed. Also the finder of the facts can hardly determine intelligently the extent of the flowage and consequent damages unless he determines first the maximum height at which the water may lawfully be maintained. We think that § 3 contemplates that the height at which the water may be sustained shall be found, except where it appears (as it does not appear here) that there is a satisfactory and convenient method of establishing that height by reference to actual conditions at the time of the assessment of damages.

In the present case the absence of such a finding may

lead to future controversy.  If the auditor's failure to make such a finding was mere inadvertence, upon recommittal the mistake may be corrected easily.  If, however, he fixed damages without first determining the height at which the water could be maintained, he should determine that height and then reconsider (taking additional testimony if necessary) the issue of damages in the light of that determination.

3. The respondents contend that there was not sufficient evidence to warrant the auditor's finding that there was no benefit to the petitioners to be set off against the damages caused by the respondents.  See *Howe* v. *Ray,* 113 Mass. 88, 89.  The auditor took a view of the premises.  He heard various expert witnesses upon the question.  He was not bound to believe the testimony of an expert called by the respondents that there was benefit.  Exceedingly indefinite statements by one of the plaintiffs as to his troubles from droughts (which might have been ameliorated by the flooding) and possible advantages of irrigation (compare *Paine* v. *Woods,* 108 Mass. 160, 172–173) also did not require any finding of benefit.

4. The respondents contend that the annual damage figure found by the auditor could not have been arrived at properly because there was no evidence, and there were no findings, in terms comparing the rental values of the petitioners' farm before and after the flooding.  In stating the measure of damages under the mill act, this court has said that "it is sufficient . . . to consider what would have been the condition of the land flowed during the time covered by the complaint if no dam had been erected, and to assess for annual damage so much as the value of the annual improvement is diminished.  The comparison to be made is between the present value and productiveness of the land and what it would have been if it had not been injured by the dam." *Howe* v. *Ray,* 113 Mass. 88, 90.  See *Palmer Co.* v. *Ferrill,* 17 Pick. 58, 66–67.  The purpose of the mill act was to substitute for common law remedies a more "simple, expeditious and comprehensive mode of ascertaining . . .

damages" recoverable at common law. See *Duncan* v. *New England Power Co.* 250 Mass. 228, 231–232. At common law, the measure of damages for a flooding which "is continuous but subject to termination by later act of the wrong-doer . . . is the lessened rental value while the injury continues." *Belkus* v. *Brockton,* 282 Mass. 285, 288. *Ryder* v. *Lexington,* 303 Mass. 281, 290–291. See Nichols, Eminent Domain (3d ed.) § 13.23, at pages 250–252.

In the present case, subject to exception, the auditor permitted the male petitioner to testify that his loss from the flowage during the twelve months prior to September 1, 1948, was "approximately $2,200. That was a net loss." The same petitioner then testified that he "would lose that every year." Generally similar testimony was given by a qualified expert. The respondents in their brief contend that the petitioner's testimony was objectionable because it permitted the witness to give a net figure, after benefits resulting from the flooding, instead of stating the total injury and deducting the benefits. It would have been much preferable if the questions, to each witness dealing with the annual loss, had been framed properly to bring out a proper comparison in the usual manner between rental value if there were no flooding and rental value after the flooding (see the comparable rule in eminent domain cases, *Peabody* v. *New York, New Haven, & Hartford Railroad,* 187 Mass. 489, 491; *Valentino* v. *Commonwealth,* 329 Mass. 367, 368, 369–370; *Baetjer* v. *United States,* 143 Fed. (2d) 391, 396 (C. C. A. 1); Hanify, Damages in Eminent Domain, 34 B. U. L. Rev. 146, 154) and if each witness had been required to state the gross damage and to offset against that the benefits, if any, from the flooding and any savings in operating expenses of the farm. However, no written objection to the auditor's report raises the question whether this evidence was admitted properly and without such an objection the question of the propriety of its admission is not preserved for our consideration under Rules 89 and 90. *Bouchard* v. *Bouchard,* 313 Mass. 531, 535. The evidence, accordingly, is taken as part of the record and is to be con-

sidered as forming part of the evidential basis for the auditor's findings. As such it constitutes a summing up of the aggregate financial effect of the detriments to the petitioners caused by the flooding.

There was evidence of many such detriments including testimony about (a) the use and productivity of the premises, before and after the flooding, for hay and other crops; (b) the delays, difficulties, and inconveniences caused to farm operations by the floodings; (c) the area of land flooded and the area made muddy or injured in lesser degree; (d) the extent to which access to parts of the land was made impossible or difficult; (e) the reduction in its usefulness for grazing and particular crops; (f) the killing of trees; (g) the reduction in the number of cows which could be supported on the farm; and (h) the reduction in use of the petitioners' available storage space because of diminished crops. There was also evidence of the extent of the petitioners' investment in the farm and of what was a fair, usual return on such an investment, and of the market value of the farm before and after the flooding. In the light of the evidence on these and other elements of damage, together with the information which the auditor obtained on the view, it cannot be said as a matter of law that there was not evidence to support the auditor's finding that the annual injury to the petitioners was $2,000. Although the auditor does not state that this figure represents the reduction in annual rental value caused by the flooding, we cannot assume that he applied a wrong measure of damages, where it is not shown that he did so. Compare *Sturtevant* v. *Ford*, 280 Mass. 303, 317–320.

The question of recommitting the report to the auditor for more adequate subsidiary findings on the matter of damages was within the discretion of the Superior Court. See *Black* v. *Parker Manuf. Co.* 329 Mass. 105, 117–118. Although the findings were meager, we cannot say that there was abuse of discretion in failing to recommit the report for this purpose. This is not a case where the findings were insufficient to permit any decision of the issue. Compare *Turgeon* v. *Turgeon*, 326 Mass. 384, 386; *Carson* v. *Brady*,

329 Mass. 36, 43. However, since the report must be recommitted in any event (see paragraph 2, *supra*), the Superior Court, in its discretion, may direct at the same time that the auditor supplement his findings (after the taking of additional testimony, if he deems that appropriate) sufficiently to show that he applied a correct measure of damages and how he applied that measure.

5. There was dispute about the date when the respondents' dam was completed. One petitioner admitted that he knew that the dam was there in 1946, but this does not bind the petitioners with respect to whether the actual flowing of the petitioners' land began then. The date when the flowing began is the date of initial injury and the petitioners had no cause of action until that injury occurred. There was abundant evidence to support the auditor's findings that the date of injury was about September 1, 1947. It may well be, even if the dam was finished in 1946, that the respondents did not put planks in the flume of the dam to hold the water back until 1947. All testimony was obviously directed to the damage caused by the respondents' flowing the petitioners' land, and if there was error as to the precise date, it has not been shown to have been prejudicial.

6. The respondents contend that there was insufficient evidence to support findings of damage to the petitioners' land through increase in the water level, greater percolation, and greater moisture. The argument is advanced, in effect, that, in the absence of clear evidence about water level conditions prior to any flowing, it is impossible to show what change in conditions occurred because of the flowing. The auditor had before him substantial testimony about general conditions on the land both before and after 1947, and of changes after 1947, which he could properly find immediately followed the flooding of the petitioners' land and which reasonably could have been attributable to that flooding. We think that the respondents' objections go only to the weight of this testimony. We cannot say that the evidence is insufficient as a matter of law to support the auditor's findings on the question of increased moisture,

nor can we say that this is a case where the petitioners have not "established beyond conjecture" (see *Nass* v. *Duxbury*, 327 Mass. 396, 400–401) recoverable damage by reason of increased moisture on, and other damage to, their land not completely flooded. Compare *Fortier* v. *H. P. Hood & Sons, Inc.* 307 Mass. 292, 301–302; *DiNardo* v. *Dovidio*, 312 Mass. 398, 404.

7. The respondents have not argued other objections and they are deemed waived.

8. The case is to be recommitted to the auditor for further findings about the height at which the water above the dam may be maintained, and for further findings, or correction of findings, which may be necessary as described in paragraph 2 of this opinion, and, in the discretion of the Superior Court, may be recommitted for further findings on the issues discussed in paragraph 4 of this opinion.

*Exceptions sustained.*