·MICHAEL SULLIVAN & another *vs.* CITY OF FALL RIVER.

Bristol.   Oct. 28, 1886. — June 29, 1887.   DEVENS & W. ALLEN, JJ., absent.

An order, passed by the mayor and aldermen of a city, directing the superintendent of streets to cause granite ·curbing to be laid on the side of a street, is not an order for specific repairs, under the Pub. Sts. c. 49, § 65, so far as the lowering the grade of the street in doing the work is concerned; and the remedy of an abutter, who sustains damage by such lowering, is by a petition to the mayor and aldermen for an assessment of his damages, under the Pub. Sts. c. 52, § 15, and not by a petition for a jury, under c. 49, § 79; and, at the trial of a petition brought under the latter statute, the city is not concluded by an admission in its answer that the order was one for specific repairs.

PETITION to the Superior Court, under the Pub. Sts. *c.* 49, § 79, filed May 13, 1886, by Michael Sullivan and Julia Sullivan, alleging that they were the owners of a certain parcel of land in Fall River on the northerly side of Bank Street, a public highway; that their land adjoined Bank Street, and extended along the northerly side of the same from Seventh Street to Chestnut Street, now Eighth Street; that on May 18, 1885, the mayor and board of aldermen of Fall River passed the following order: "Ordered, that the superintendent of streets be and he is hereby authorized and directed to cause to be laid granite curbing on the north side of Bank Street from Seventh Street to Chestnut Street;" that in pursuance of said order, and in execution of the powers conferred thereby, the superintendent of streets caused said granite curbing to be laid in Bank Street between Seventh Street and Chestnut Street, and, in laying said curbing, the grade of Bank Street was lowered, and the surface thereof was cut down several feet in places along the line of the petitioners' land, abutting on Bank Street, below its former established level, thereby greatly injuring and damaging the petitioners' land, and the buildings standing thereon, abutting on Bank Street; that a year had not elapsed since the passage of said order by virtue of which the repairs and alterations were made; that neither at the time of the passage of said order, nor at any time since the same was passed, had the mayor and board of aldermen, or their successors in office, estimated, assessed, or paid any damages to the petitioners for the injury which they had suffered in their property by reason of said repairs and lowering of the grade of Bank Street; and praying for a jury to estimate and assess said damages.

The answer admitted that the order of May 18, 1885, "viz. a duly recorded order for specific repairs," was passed as alleged; and that in pursuance of said order, and in execution of the powers conferred thereby, the superintendent of streets laid said curbing; and averred that he did not vary the legal grade of said street as duly established by the records of said city in 1870, but conformed to and obeyed the same; that the petition was not brought within the period allowed by the statutes, and not within one year from the establishment of said grade in 1870; that the Superior Court had no jurisdiction of the petition; and

that, if any work had been done, except as above stated, the same was illegal, and nothing was recoverable therefor in this proceeding.

Trial in the Superior Court, before *Thompson*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that on December 23, 1870, the city council laid out Bank Street from Oak Street to Chestnut Street, now Eighth Street, and established its grade at the time of location, and awarded no damages; that said street was petitioned for and the petition filed with the city clerk on April 4, 1870; that shortly after, and within a year, the respondent removed large stones or boulders and part of a ledge from Bank Street, coated the same with gravel at the surface, and put the street in a passable condition; that it was wrought for travel and opened for public use, and was used as a public street or highway; that about two years after, when stones began to show through the surface, more gravel was put upon the street, and at other times since then up to 1885 the superintendent of streets put gravel upon said street, and kept it in repair for public travel, and it was used as a public highway; and that said street was, for a short distance, in front of the petitioners' property, from the corner of Seventh Street, at the grade as established at the time of opening said street.

The order of May 18, 1885, was executed by the superintendent of streets upon the grade established in 1870, and the injury complained of was occasioned by the laying of the curbing. The superintendent of streets is also the surveyor of highways.

The petitioners own all the property on the northerly side of Bank Street between Seventh Street and Eighth Street, and owned the same on December 23, 1870.

In 1875, water pipes were laid in the southerly side of Bank Street, four and a half feet below the surface as opened to public travel, between Seventh Street and Eighth Street, and were laid, at the request of the petitioners, by the respondent.

In 1878, a sewer was constructed in Bank Street from Eighth Street about one hundred feet, or about midway between Seventh Street and Eighth Street, by the respondent, at the request of the petitioners; said sewer was constructed about four feet below the surface of Bank Street. It appeared that sewers are

not constructed by any fixed rule establishing the depth below the established grade.

There was also evidence that the respondent made repairs upon Bank Street, such as filling in after the water pipes were laid and the sewer constructed, and filling in cavities after taking out large stones at the time the street was opened for travel.

There was no evidence of any orders for specific repairs other than those passed on December 23, 1870, and May 18, 1885. The city did nothing up to 1885 towards working Bank Street to the grade of 1870.

The respondent requested the judge to rule that the petitioners could not introduce evidence showing that they suffered damages resulting from the order of May 18, 1885, as set forth in the petition, said order being merely to lay curbing, and that no damage could be incurred, as the order itself did not affect their property, but related to a line in the street; and that the petitioners did not file their petition within one year from the order of December 23, 1870, locating and establishing the grade of said street. The judge refused so to rule.

It also appeared that the petitioners' land was cut down in some places, the deepest cut being three feet ten inches.

The respondent requested the judge to instruct the jury as follows: "1. The petitioners are entitled only to such damages as they have sustained by reason of the order of May 18, 1885, which was an order for specific repairs, and related only to the laying of curbing in said street. 2. The city is not liable for acts done in excess of said order by any of its servants, and the petitioners cannot recover under their petition for any damage sustained by the cutting down and working said street by the superintendent of streets. 3. The grade has not been changed since it was established in 1870, and the petitioners are barred by the Pub. Sts. c. 49, § 79, from bringing this petition for damages for working said street to the established grade of 1870. 4. The surveyor of highways cannot change or alter an established grade of a street once made and established by the mayor and board of aldermen, and acts done in the repairs of said street were not an alteration or change of the grade, and such acts of repair did not alter or change the grade of said street as established in 1870. 5. There was no abandonment of said

location and grade of 1870 by reason of repairs done by the superintendent of streets, or by laying a sewer to accommodate the petitioners' premises, or by laying water pipes without regard to any established grade."

The judge refused to give the instructions requested, and instructed the jury as follows :

" This is a case of specific repairs, and the petition was rightfully brought under the Pub. Sts. *c.* 49. If the city, in passing the order of May 18, 1885, left the superintendent of streets to place the curbing, without specifying the grade at which it should be placed, and he assumed that the grade of 1870 was the grade intended by the order, and acted upon that assumption and placed the curbing upon that grade, and wrought the sidewalk to meet that grade, without any notice from the city that the grade of 1870 was not intended by the order of May 18, 1885, then the city may be held liable, if that grade was not in fact the true grade of the street, and the petitioners suffered damage by reason of the placing of the curbing. The grade fixed in 1870 was not necessarily the grade of Bank Street of May 18, 1885 ; the city may so act with reference to the grade of the street as to give the party whose land abuts upon it the right to assume that a different grade has been established by the city from that fixed by an order by the city council, and entitle the party to damages for a change of such assumed grade.

" In this case, it is left to the jury to say whether or not the city has so acted with reference to the grade of Bank Street as to give the petitioners the right to assume that the grade as it existed just prior to the order of May 18, 1885, was the true grade of Bank Street.

" The jury have the evidence as to the laying out of the street in 1870, as to its being wrought and opened for public travel, the laying of water pipes and sewer pipes through the street, and the repairs upon it from 1870 to May, 1885, and from this evidence the jury will determine whether or not the city had abandoned the grade as fixed in 1870, and adopted the grade as it was in fact from 1870 up to May 18, 1885.

" If the jury find that the city had abandoned the grade as fixed in 1870, and adopted the grade as it was just prior to the order of May 18, 1885, and that under said order of May 18,

1885, the superintendent of streets placed the curbing at the grade as fixed in 1870, and cut down the sidewalk to meet that grade and to accommodate the sidewalk to it, as indicated by the placing of the curbing, and made necessary on account thereof, and the petitioners suffered damages thereby, then the petitioners may recover."

The jury returned a verdict for the petitioners; and the respondent alleged exceptions.

*D. V. Sullivan*, for the respondent.

*J. W. Cummings*, for the petitioners.

FIELD, J.   The distinction between specific repairs upon a highway or town way, ordered under the Pub. Sts. *c*. 49, § 10, or § 65, and repairing a highway or town way by raising or lowering it, or doing some other act upon it, under the Pub. Sts. *c*. 52, § 15, was discussed, and the history of these statutes carefully traced, in *Sisson* v. *New Bedford*, 137 Mass. 255.

Under the provisions of the statutes first cited, the specific repairs are ordered by the persons authorized to lay out a highway or town way, and the damages are to be estimated by them. Pub. Sts, *c*. 49, §§ 15, 16, 32, 68, 79.   The reason for these provisions appears in the St. of 1835, *c*. 152, § 7, where they were first enacted in reference to highways.   That section reads, " That whenever a petition shall be presented to the county commissioners to lay out or alter a highway, and they . . . . shall be of opinion that the existing highway, between the termini named in the petition, can be so far amended as to supersede the necessity of laying out a new highway, or altering the location of existing ways, they shall, after due notice to the towns interested, be empowered and required to direct specific repairs to be made in the existing ways, so as to promote the public convenience," &c.

The commissioners on the revision of the statutes in 1858 recommended a similar provision in reference to town ways; and the Gen. Sts. *c*. 43, § 59, enact that " the selectmen of the several towns may lay out or alter town ways for the use of their respective towns; . . . . or may order specific repairs to be made upon such ways."

When county commissioners order specific repairs upon highways, which occasion damage to persons or property, they are

required to "estimate the same and make return thereof." Gen. Sts. *c.* 43, § 15.   Pub. Sts. *c.* 49, § 15.   When selectmen or road commissioners order specific repairs upon town ways, the select-men or road commissioners are to determine the damages.   Gen. Sts. *c.* 43, § 62.   Pub. Sts. *c.* 49, § 68.   The intention is, that the repairs to be made shall be specified in the order, so that the condition of the way after the repairs are made can be determined from the order, and the damages can be assessed before the repairs are completed.   If damages are not given in the order directing the specific repairs, or in the return made upon it, this is held to be an adjudication that no damages have been suffered ; and the party aggrieved may apply for a jury.

The Pub. Sts. *c.* 52, § 15, are, in substance, a reënactment of the Gen. Sts. *c.* 44, § 19, and of the Rev. Sts. *c.* 25, § 6 ; and this provision was inserted in the Revised Statutes in conse-quence of the decision of *Callender* v. *Marsh*, 1 Pick. 418.   The purpose of this provision was to give to an owner of property a remedy when the authorities charged with the duty of keeping a public way in repair raised or lowered the way, or did any other act upon it for the purpose of repairing it, whereby his property was damaged.   The landowner must file a petition with the selectmen, road commissioners, or mayor and aldermen "after the commencement and within one year from the com-pletion of the work," and an adjudication must be made "within thirty days after the filing of the petition," and if the petitioner is aggrieved by the estimate of damages, or by a refusal or neglect to estimate them, he may within one year from the expiration of said thirty days apply for a jury.   See Pub. Sts. *c.* 52, § 16. The damage accrues when the act is done.   *Page* v. *Boston*, 106 Mass. 84.

When, then, a change is made in the grade of a public way in a city, if it is made by an authority competent to fix the grade, and the nature and extent of the change are specifically declared in, and made a part of, the record of the proceedings, the repairs made in accordance therewith are regarded as spe-cific repairs under the statutes first cited.   But if the repairs are made or ordered by an authority not competent to fix the grade of the way, or if made or ordered by an authority competent to fix the grade but the order does not determine specifically the

nature and extent of the change to be made, and the way is repaired, either by an actual change of grade or otherwise, under an authority competent to direct the repair of ways, so that they may be safe and convenient for travellers, the damages to property occasioned by such repairs are recoverable under the statutes last cited. *Thurston* v. *Lynn,* 116 Mass. 544.

Without considering whether, under the charter of the city of Fall River in force when the order of May 18, 1885, was passed, the mayor and aldermen, without the concurrence of the common council, could alter the grade of a street, (see St. 1854, c. 257, §§ 8, 14,) we are of opinion that by this order they have not attempted to change or fix the grade of the street, and that it is not an order for specific repairs by lowering the grade of the street. The petitioners have been injured, not by the setting of the curbing, but by the lowering of the surface of the street. The order passed was simply that granite curbing be laid on the north side of Bank Street, and it is like an order directing a street to be paved, and the cutting down of the grade of the street must be regarded as a repair of the street by lowering its surface. Whether the grade originally established was abandoned by the city need not be determined. If it was not abandoned, the petitioners' remedy was under the original taking, and is now gone. If the original grade was abandoned, the petitioners' remedy for lowering the actual grade of the street, if they now have any against the city, is under the Pub. Sts. c. 52, § 15. See *Cambridge* v. *County Commissioners,* 125 Mass. 529; *Mitchell* v. *Bridgewater,* 10 Cush. 411. The ruling of the court that the petition was rightfully brought under the Pub. Sts. c. 49, was therefore erroneous.

Apparently the petitioners have never presented any petition to the mayor and aldermen, and therefore cannot maintain the present petition, but, if the fact is otherwise, they can apply for leave to amend their petition. *Brown* v. *Lowell,* 8 Met. 172.

The facts proved raise a question of law on which the respondent is not concluded by its answer.

*Exceptions sustained.*