FRANK P. CUTTER & others *vs.* ARLINGTON CASKET COMPANY
& others.

Suffolk.   November 11, 1925. — February 26, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Equity Pleading and Practice,* Master: recommittal of report, exceptions;
    Appeal; Bill; Amendment before full court; Decree.  *Corporation,*
    Officers and agents.  *Equity Jurisdiction,* Minority stockholders' bill,
    Res judicata.  *Estoppel.*

Upon the coming in of a master's report, the court in its discretion, follow-
    ing a hearing, at which the exceptions to the report were overruled and
    the report was confirmed, may recommit the case to the master for
    further report without a request by either party, if the nature of the
    matter under consideration requires further investigation and a finding
    of further facts not inconsistent with the report confirmed.
A court may overrule exceptions to a report of a master and recommit
    the report for further findings of fact not covered by the original
    reference to the master.
Where, in a suit in equity, an interlocutory decree has been entered over-
    ruling exceptions to a master's report and confirming the report, from
    which no appeal is taken, and later an interlocutory decree is entered
    vacating the confirmation of the report and recommitting it to the
    master, and the defendant appeals from the second interlocutory decree,
    such appeal does not operate by relation to set up an appeal from the
    overruling of the exceptions to the original report.
A bill in equity against a corporation and persons holding a majority
    of its stock and in control of the board of directors was entitled a "bill
    for injunction, cancellation of notes and accounting by the complain-
    ant for himself and in behalf of other stockholders of the . . . [corpora-
    tion], who may join herein and become parties hereto."   There were
    allegations of defrauding of the corporation by the individual defend-
    ants.   A closing paragraph stated in substance that, because of the
    control exercised by the individual defendants, application to the board
    of directors for relief was "useless."   The prayers were for the cancella-
    tion of certain notes and mortgages of the corporation held by the
    individual defendants, and for an accounting by them to the corporation.
    After a report by a master and a final decree for the plaintiffs, the
    individual defendants appealed and contended that the bill was not in
    proper form to support the decree.   This court, assuming that the form
    of the bill was irregular, allowed a motion by the plaintiff, made in open
    court at the hearing on the appeal, for leave to amend the bill so as more
    specifically to ask for relief in behalf of the corporation.
A consent decree does not necessarily conclude the parties to it and is not
    in itself *res judicata* as to the facts put in issue on the bill and answer,
    because such facts were not determined after judicial consideration.

In the organization of a corporation, the two principal stockholders paid in money for which, according to votes of the corporation which they as controlling officers caused to be passed, they received notes of the corporation. Afterward, in the sale of preferred stock of the corporation, they, as directors and controllers of the corporate vote, in substance represented to the public and more particularly to persons whom they as individuals and as directors, through their agent, solicited to purchase stock in the reorganized company, that they had invested in the corporation their own money as an original investment, and nothing was said about the notes, and various persons were induced by the statements to make further investments. In a suit by a minority stockholder to cause the cancellation of the notes, it was *held*, that

(1) The representation above described constituted a fraud upon the purchasing stockholders and a breach of fiduciary duty to the corporation;

(2) The controlling stockholders and officers in the circumstances above described were estopped to deny the truth of their representations; as also, through the attempted enforcements of their several notes, to establish the falsity of their declarations.

The master, who heard the suit above described, found that a previous suit had been brought by the corporation against one of the controlling stockholders, who was a defendant in this suit, to have the note held by that defendant cancelled, and that, in that suit, by consent of parties, a final decree dismissing the bill without costs was entered in accordance with a "memorandum of compromise and agreement," under which a note held by the defendant was renewed by the giving of a new note for an unpaid balance, payable in instalments. From the master's findings, it appeared that, at the time of a vote authorizing such compromise, the alleged fraudulent stockholder and officer had withdrawn from active participation in the corporation, and there was no evidence that he or his confederates controlled the action of the directors in passing that vote. The master, however, found that the making of the compromise agreement constituted a continuing fraud upon the stockholders and the public who might become prospective investors. A final decree against all the alleged fraudulent stockholders and directors, including the defendant in that suit, was entered. *Held*, that

(1) The finding by the master of continuing fraud was inconsistent with his other findings;

(2) The final decree must be modified so that no relief should be given against the defendant who was defendant in the former suit.

BILL IN EQUITY, filed in the Superior Court on November 27, 1922, against Arlington Casket Company; Mary E. Booth, executrix of the will of John Booth; and Maurice Kane for an accounting and the cancellation of certain notes and a mortgage as described in the opinion.

The bill was entitled a "Bill for injunction, cancellation

of notes and accounting by the complainant for himself and in behalf of other stockholders of the Arlington Casket Company, who may join herein and become parties hereto." The seventh paragraph of the bill was as follows: "It is useless for your complainant to attempt to obtain relief through any action by the board of directors or the stockholders of the Arlington Casket Company as the board of directors is the same board which authorized the said mortgage and the majority of the said board is under the control of and act by the direction of the said Maurice Kane and the estate of the said John Booth and the said Maurice Kane and the estate of the said John Booth control a great majority of the common stock of the said corporation so that it is useless for your complainant to apply to the corporation or the board of directors for relief."

On motion, several other stockholders in the defendant corporation were admitted as parties plaintiff.

The suit was referred to a master, who filed his report on November 13, 1923. Material facts found by him are described in the opinion. Objections and exceptions to the report were filed by the defendant, executrix of the will of Booth. None were filed by the defendant Kane. The exceptions were heard by *Morton*, J., by whose order an interlocutory decree was entered overruling them and confirming the report. No appeal from this decree was filed. The suit then came on to be heard on the question of final decree by *O'Connell*, J., by whose order an interlocutory decree was entered vacating the former interlocutory decree, confirming the report of the master and recommitting the report for the finding of certain further facts. From this interlocutory decree the individual defendants appealed. The master then filed a supplemental report, to which the individual defendants filed an objection and an exception on the ground that it was filed pursuant to the order vacating the former interlocutory decree confirming the report and recommitting it, which "in form and substance is improper, illegal, entered without authority of court and is not valid and binding upon said defendants." After a hearing by *O'Connell*, J., an interlocutory decree was entered on Decem-

ber 27, 1924, "that the defendants' exceptions to the master's report and supplemental report be overruled and that the master's report and supplemental report be confirmed." From this interlocutory decree the individual defendants appealed.

On June 20, 1925, a motion by Adam M. Gardner, who by decree of the Superior Court in another suit in equity had been appointed receiver of the defendant corporation, that he be admitted as a party in the action, was allowed.

After a further hearing by *O'Connell*, J., there was entered a final decree containing six paragraphs. In the first paragraph the defendant Booth, executrix, was ordered "to cancel and deliver up the note of $8,000 given by the Arlington Casket Co. to John Booth in March, 1922." In the second paragraph she was ordered to discharge and cancel the mortgage securing that note. In the third paragraph the defendant "Rose A. Kane, as she is administratrix of the estate of Maurice Kane," was ordered to cancel and deliver up a note of $1,000 given to Maurice Kane by the defendant corporation. In the fourth paragraph it was adjudged that "there is due from the estate of John Booth to the Arlington Casket Co. $4,840, the payments made by the Arlington Casket Co. to John Booth or the estate of John Booth on account of notes of $8,400 referred to in the bill of complaint and the master's report together with the sum of $1,559.47 paid by the Arlington Casket Co. to John Booth or the estate of John Booth for interest on the aforesaid notes together with interest on all said amounts from the dates of payment thereof, as set forth in the master's report and supplemental report to May 26, 1925, to wit, $1,101.68, making a total sum of $7,501.15, and that execution issue for said amount against the goods and estate of John Booth in the hands of Mary E. Booth, executrix." In the fifth paragraph it was adjudged "that there is due to the Arlington Casket Co. from the estate of John Booth and from the estate of Maurice Kane the sum of $4,000, the amount of the note paid by the Arlington Casket Co. to the Menotomy Trust Company, being part of the sum of $13,400 described in the bill of complaint and master's report, together with $245.80 interest

paid on the said note and together with interest on the said payments from the dates of said interest payments as reported by the master and on said $4,000 from August 5, 1921, to May 26, 1925, amounting to $976.93, making a total amount of $5,222.73, and that execution for said amount issue against the goods and estate of the said John Booth in the hands of Mary E. Booth, executrix, and against the goods and estate of the said Maurice Kane in the hands of Rose A. Kane, administratrix." The sixth paragraph dealt with costs against the defendants. Both individual defendants appealed from the final decree.

*F. L. Norton,* for Mary E. Booth, executrix, and Rose A. Kane, administratrix, defendants.

*G. L. Dillaway,* for Arlington Casket Company and its receiver, defendants.

*A. Robinson,* for the plaintiff.

PIERCE, J.    This is a bill in equity brought by a minority stockholder of the Arlington Casket Company, a manufacturing corporation, on behalf of himself, and such other stockholders as might join him, against the stockholder Maurice Kane and the executrix of a deceased stockholder, John Booth, alleging fraud of the individuals on the public who invested in the stock of the corporation.   The corporation is made a party defendant.   Later seven other persons were admitted as parties plaintiff.   Maurice Kane died after the hearing before the master and his administratrix was admitted to defend.

The bill prays that certain notes of the corporation and a mortgage upon the property of the corporation be declared null and void, delivered up, cancelled and discharged.   The bill further prays for an accounting and for the repayment to the corporation of moneys paid to the individual defendants and to a trust company upon notes of the corporation.

Upon the filing of the answers, the suit was referred to a master who heard the parties and made report with the objections taken thereto.   Exceptions founded upon the objections were duly filed.   These exceptions were overruled and the report was confirmed without appeal by the defendants.   Upon presentation of a proposed final decree the

judge, on his own motion, entered an interlocutory decree vacating the previous confirmation of the master's report and recommitting it to the master for the purpose of finding the amount of money paid by the Arlington Casket Company to John Booth, or the estate of John Booth, on account of notes amounting to $8,400, referred to in the bill of complaint; also the amount of money paid to said Booth, or his estate, for interest on said notes and the dates of said payments of principal and interest; and also for the purpose of finding the amount of interest paid by said Arlington Casket Company to the Menotomy Trust Company for interest on the note of $4,000, referred to in the report, and the date of said payment. Both individual defendants appealed from this order.

The master after further hearing made a supplemental report, to which objections were taken and exceptions duly filed, based in substance on contentions that the order of the court to which an appeal was taken was "improper, illegal, entered without authority of court and is not valid and binding upon said defendants." These exceptions were overruled and an interlocutory decree entered confirming the master's report and supplemental report. The individual defendants appealed from the interlocutory decree.

Upon the coming in of a master's report the court in its discretion may overrule the exceptions thereto, confirm that report and recommit the case to the master for further report without request of parties, if the nature of the matter under consideration requires further investigation and finding of further facts not inconsistent with the confirmed report; for example, the statement of an account between persons found by the report to be partners or to stand in a fiduciary relation to each other. There is no reason why the court may not overrule exceptions to a report and recommit it for further findings of fact not covered by the original reference to the master. See in this connection *Park* v. *Johnson,* 7 Allen, 378; *Eastern Bridge & Structural Co.* v. *Worcester Auditorium Co.* 216 Mass. 426, 431; *Daniels* v. *Daniels,* 240 Mass. 380; *Gadreault* v. *Sherman,* 250 Mass. 145, 149. An appeal from such a recommittal cannot operate by relation

to set up an appeal not duly taken from an interlocutory decree overruling exceptions and confirming a report. A final decree was entered based upon the findings of the master and the prayer for relief, to which the individual defendants entered an appeal. The suit is before this court on all the appeals taken by the defendants.

As a bill brought by minority stockholders on behalf of the corporation, the form is irregular and not commendable; it perhaps is sufficiently obvious that it was brought for the use and benefit of the corporation and sufficiently clear that it would have been futile to seek relief through any action by the board of directors or the stockholders of the Arlington Casket Company. *Brewer* v. *Boston Theatre*, 104 Mass. 378, 396. *United Zinc Co.* v. *Harwood*, 216 Mass. 474, 476. *O'Brien* v. *O'Brien*, 238 Mass. 403. However, we are of opinion the motion of the plaintiff in open court for leave to amend the bill so as more specifically to ask for relief in behalf of the corporation should be and therefore is granted.

The material facts found by the master, with certain inferences of fact drawn therefrom relevant to the defendants Booth and Kane, are as follows: The Arlington Casket Company was organized in January, 1919, with Kane, John Booth and Booth's two sons (Thomas and Edward), as incorporators. Twenty thousand dollars capital stock was authorized of which $400 fully paid was issued at the date of the incorporation. Prior to that time Kane and Booth had been in the casket making business together, though not partners. They had tangible assets worth about $3,000, which Booth had paid for. At the first meeting of the directors, in January, 1919, John Booth offered to sell the company all his assets in the casket business, including good will, at a valuation of $20,000 put upon such property and good will by the board of directors, and the directors Kane, John Booth and Edward F. Booth accepted the offer. These assets, worth about $3,000, were transferred to the corporation; but the master does not find whether the price was ever paid or what, if anything, was done in place of payment. In March, 1919, the remaining $19,600 of the authorized cap-

ital stock was issued to the four incorporators, ostensibly for machinery, $1,000; merchandise, $8,600; bills receivable, $5,000; good will, $5,000.   There is nothing in the report to the effect that this stock was issued in payment of the property and good will sold in January by Booth to the corporation, nor does it there appear in what proportion the stock was divided among the incorporators or why it should have been divided at all.   The inference is that the incorporators divided among themselves the remaining stock of the par value of $19,600, without payment.   Between the incorporation in January and April, 1919, with money obtained from John Booth, the corporation purchased material and machinery of the approximate value of $3,000 and in January, February, March and April, 1919, gave John Booth six demand notes aggregating $6,400, which sum, the master finds, was "put in by John Booth."   In July, 1920, the corporation reorganized.   John Booth had then paid in to the corporation $8,400, Kane had put in $1,000, and $4,000 had been borrowed from the Menotomy Trust Company, a total of $13,400.   The money borrowed from the Menotomy Trust Company subsequently was repaid.

Respecting the money put into the corporation by John Booth and Kane, for which corporate notes were issued to Booth including the $4,000 borrowed from the Menotomy Trust Company and subsequently repaid, amounting to $13,400, the master finds that such money was put in by them with the expectation of its being repaid to them; that it went to the purchase of machinery, materials, merchandise and to repay the running expenses of the business.   The master further finds that these notes were kept off the books until April, 1919, by the order of Kane, although they were issued between January and April, 1919.   In substance, he further finds that after the reorganization of the corporation in 1920 Booth and Kane concealed from the public and prospective stock investors that the payments to the company represented by the notes were loans, and that they did so with the intent it should appear that the cash put in by them as a capital investment amounted to $13,400.

The corporation reorganized in July, 1920, with a capital

of ten thousand shares preferred and ten thousand shares common, each at the par value of $10 per share, took over all assets including good will of the first Arlington Casket Company, and assumed all its debts and liabilities. The directors fixed the value of such assets and good will at $100,000 and voted to issue ten thousand shares of common stock of the new company in payment thereof, in the proportion of fifty shares of new company stock to each share of the old company held by its stockholders. This division resulted in holdings by Kane of approximately three thousand shares common, par value $30,000; by John Booth and his two sons of three thousand shares common, par value $30,000; and a "donation" of four thousand shares common, par value $40,000 by Booth and Kane for promotion purposes.

At the request of the directors John Booth and Kane, one Harrington, a broker, undertook to sell the stock of the corporation on certain terms not shown in the report. During the time the directors and Harrington were negotiating with a view to have the firm of which Harrington was a member sell the stock of the company, Harrington asked to inspect the books and was told by Kane that "no regular set of books were kept" but the company would furnish Harrington and Company with financial statements for its use in preparing its prospectus and formulating selling arguments for the stock. The directors furnished Harrington "certain statements, or inventories" showing among other things an item of "'cash invested $13,400' on statement dated May 26, 1920; an item of 'cash invested (original) $13,400' on statement of October 1, 1920, and on a statement of November 22, 1920, an item 'original investment $13,400.'" Harrington was informed by John Booth and Kane that they had invested their own money in the concern. Harrington issued a prospectus signed by Arlington Casket Company, Maurice Kane, President, to the effect in substance that the old company started business "with $2,000 in orders and about $3,500 cash capital." By the use of this prospectus and the authorized statements that Booth and Kane had their money invested in the corpora-

tion, preferred stock was sold to various persons, including all the parties complainant hereto.

At the first annual meeting of the new Arlington Casket Company in January, 1921, Kane submitted a financial report for the previous year on which appeared an item of "notes payable $13,400," which item referred to the same $13,400 previously used in describing the "original investment." The item appeared in this form on the records of the corporation for the first time as "inventory" and operating entries of December 31, 1920. On December 21, 1920, $6,400 of the notes payable to John Booth had been renewed by demand notes, and interest on the cancelled $6,400, amounting to $711.95, had been paid to John Booth. At this January meeting strong objection was raised to the item of $13,400 by two directors, Dillaway and Harrington, these directors charging misrepresentation on the part of Booth and Kane as to the status of the $13,400. During the year 1921 business was carried on by the company and additional preferred stock was sold through the efforts of Harrington. On August 4, 1921, a note of $2,000, one of the notes previously given to John Booth, was renewed by a six months' note given by the company. At the annual meeting in January, 1922, the question of the Booth notes and of the original investment was again brought up. During all this time it was contended by and on behalf of Booth and Kane that the money represented by the notes in question was advanced to the company as a loan and not as a capital investment; and that the stock in the first Arlington Casket Company had been issued against merchandise, machinery and good will purchased with money other than that furnished by Booth.

At the annual meeting in January, 1922, the treasurer of the corporation was authorized to pay John Booth $50 per week on account of the notes, and a total of $400 was thus paid. In February, 1922, John Booth put some or all of the notes in the bank for collection. Thereupon a bill in equity was brought in the name of the corporation, alleging the invalidity of some or all of the notes and seeking, among other prayers, that such notes be cancelled and returned to

the plaintiff.   On the filing of the bill, an order issued that the defendant be temporarily restrained from collecting or taking steps to collect legally or otherwise any or all of said notes until further order of court.   By agreement of counsel the restraining order was continued until further order of the court.   After the filing of an answer a "Compromise and Agreement" was entered into between the corporation and John Booth, which agreement was executed under the official seal of the corporation, signed by its president, Maurice Kane, duly authorized by the board of directors on March 17, 1922, also by its treasurer, Martin L. Bannican, and by John Booth.   This settlement provided among other provisions that the pending suit in equity be dismissed without costs, and that "The notes now held by the said Booth of which there is a balance of Eight Thousand ($8,000.) Dollars unpaid are to be paid by a new note for Eight Thousand ($8,000.) Dollars payable Sixty ($60.) Dollars per week and secured by a mortgage on the plant of the corporation.   The said corporation shall have the right of anticipating payments upon the said note and mortgage and if the entire mortgage and said note is paid within six months the said Booth agrees to return to the said corporation all the common stock of the said corporation now held by him or in his control and amounting to about $30,000. par value.   If not paid within six months said note and mortgage are to continue payable at the rate of Sixty ($60.) Dollars per week and the said Booth still retain said stock."

A decree dismissing the bill upon the plaintiff's motion, "counsel for both parties having been heard and consenting thereto," was ordered and decreed on March 20, 1922.   A consent decree does not necessarily conclude the parties to it, and is not in itself *res judicata* of the facts put in issue on the bill and answer, because such facts were not determined on judicial consideration.   *Butchers' Slaughtering & Melting Association* v. *Boston,* 137 Mass. 186.   *Coyle* v. *Taunton Safe Deposit & Trust Co.* 216 Mass. 156, 160.   *New York Trust Co.* v. *Brewster,* 241 Mass. 155.   *Brown* v. *Cleveland Trust Co.* 233 N. Y. 399.

The findings of the master, with the inferences to be drawn

from the fact that Booth, Kane, and the sons of Booth, at all times before the reorganization owned the entire stock of the several corporations and at all times constituted a majority of the board of directors, holding the offices of president and treasurer, warranted, if they did not require as a conclusion of fact, that Booth and Kane, as directors and controllers of the corporate vote, represented to the public, and more particularly to persons whom they as individuals, and as directors, through their agent, solicited to purchase stock in the reorganized company, that they had their own money, $13,400 in cash, invested in the corporation; and that various persons were induced by their statements to invest in the reorganized corporation. These representations by Booth and Kane as individuals, conjoined with their votes as directors, president and treasurer of the corporation, to issue the notes sought to be cancelled, constituted a fraud upon the purchasing stockholders and a breach of fiduciary duty to the corporation, and they should be and are estopped to deny the truth of their representations; as also, through the enforcements of the several notes, to establish any rights based on their false representations.

The report discloses an intentional misstatement of material facts to the harm of the corporation, and to its stockholders who became such because of reliance on said false representations, made by the defendants while owners of the majority of stock, and while directors and promotors of the sale of the corporate stock, under such circumstances that the misstatement of facts was a breach of fiduciary duty and a fraud on the corporation and stockholders. But the corporation which was defrauded by the acts of Booth and was entitled to have cancellation of notes given by it to Booth, on December 21, 1920, in renewal of the demand notes given to him by the old corporation had the legal authority, and its directors had the power to make the "Memorandum of Compromise and Agreement," above set out, of the bill in equity, provided that action was not tainted with fraud, or entered into under the domination of Booth. The finding by the master that the renewal of the notes and the execution of the mortgage provided for

in the "Agreement" constituted a continued fraud upon the stockholders and the public who might be prospective investors is inconsistent with his finding that the Booths, father and sons, withdrew from active participation in the company at the January, 1922, annual meeting. There is no evidence that thereafter Booth, his sons or Kane were directors, or that they controlled the actions of the directors. In these circumstances and upon the facts found the plaintiff failed to prove a tainted agreement and compromise, and that agreement is controlling. It is not denied that the directors were without authority to place the mortgage given to secure the payment of the notes on the plant of the corporation. It follows that paragraph one of the final decree should be stricken out; that paragraph four of that decree should be stricken out; that paragraph five should be changed to read: That there is due to the Arlington Casket Co. from the estate of Maurice Kane the sum of $4,000, and that execution for said amount issue against the goods and estate of the said Maurice Kane in the hands of Rose A. Kane, administratrix.

The interlocutory decrees, and the final decree as modified, must be affirmed with costs.

*Decree accordingly.*