ELISE CARSON &. others *vs.* JAMES R. BRADY & another.

Essex. March 4, 1952. — May 7, 1952.

Present: LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Adverse Possession and Prescription. Way*, Public: what constitutes, by prescription; Private: creation. *Easement. Equity Pleading and Practice*, Admissions in pleadings; Amendment; Master: findings; Rehearing.

A deed conveying a parcel of land together with all the grantor's rights in a private way could not of itself create any new rights in the way as against the owners of the fee thereof. [39]

A conclusion that a way had become a public way by prescription would be justified by evidence supporting findings that the municipality had repaired it for many years and plowed snow thereon, and that for fifty years open, adverse, and continuous use of it had been made by the public in the same manner as the public ways in the vicinity had been used.

An admission in the answer in a suit in equity of a certain fact alleged in the bill precluded a finding at variance with that fact so long as the pleadings stood unchanged. [40]

In a suit in equity involving the defendant's right to use a certain way, where it appeared that the issue whether the way had become a public way by prescription had been fully tried and that a finding that it had

Carson *v.* Brady.

was supported by the evidence but that such finding was precluded by
an admission in the answer of an allegation in the bill that the way was
a private way, an appropriate case was presented for allowance of an
amendment to the answer setting up that the way had become a public
way.

A conclusion by a master which does not purport to have been based
solely on the subsidiary facts reported and which may have been based
on unreported evidence is binding on the trial court and on this court
unless shown by such subsidiary facts to be unjustified.  [41]

An alleged prescriptive right of a landowner to use a private way for
hauling gravel from his premises must be established independently of
any prescriptive rights of others so to use the way.  [42]

Findings by a master showing that a private way had been used by the
residents and landowners thereon without limitation or restriction for
a century but not showing whether or not.it had been used for the
prescriptive period of twenty years for hauling gravel from certain
premises thereon did not provide a sufficient basis for an adjudication
of an alleged prescriptive right of the owner of those premises to use
the way for such hauling and the suit was remanded to the trial court
for further findings on that issue.

BILL IN EQUITY, filed in the Superior Court on June 5,
1951, seeking, among other things, that the defendants be
enjoined from using Preston Place Road for the transpor-
tation of gravel by motor trucks, and from any use of
the road constituting a nuisance "by noise, dust, speed of
motor vehicles."

The suit was heard by *Sullivan*, J., upon a master's report.

*Charles W. Davis*, (*John L. Simonds* with him,) for the
plaintiffs.

No argument nor brief for the defendants.

RONAN, J.  These are appeals by the plaintiffs from an
interlocutory decree confirming a master's report as modi-
fied and from a final decree limiting the defendants in the
transportation of gravel over Preston Place Road to sixty
truck loads a day and between the hours of 7 A.M. and 5 P.M.
in trucks of not more than three ton capacity and at a
speed not greater than fifteen miles an hour.  The plaintiffs
contend that they are entitled to much more relief.

Preston Place Road, hereinafter called the Road, runs
generally easterly from Hart Street, a public way in the city
of Beverly, about three quarters of a mile into the town of
Manchester where it joins Chebacco Road, so called.  Horse

Hill Lane joins the Road on the northerly side forming Thissel's Corner at a point about 2,500 feet east of Hart Street. A gravel pit, known as Brady's Pit and owned by the defendant Lorraine M. Brady and operated by her husband, James R. Brady, the other defendant, is located on the northerly side of the Road about 1,250 feet east of Thissel's Corner. All of the plaintiffs reside and own land abutting on the Road between Hart Street and Thissel's Corner, except Clare, who resides on the southerly side of the Road opposite the Brady pit, and Larson, who resides on the northerly side of the Road about 100 feet east of Thissel's Corner. The Road between Hart Street and Thissel's Corner is a gravel road built on a stone foundation and for many years prior to 1950 was repaired by the city of Beverly and its surface given an asphalt coating. In the winter the city ploughs the snow between Hart Street and Brady's Pit. The width of the Road varies from sixteen to twenty feet.

The Road in 1856 extended from Hart Street to what is now known as Brady's Pit and was the only way open to Hart Street to the predecessors in title of all the parties to the present proceedings. As early as 1878, ice cut from a pond near Brady's Pit was transported for a number of years over the Road, and so was ice cut from a pond in Manchester for a number of years prior to 1918. Garbage had been hauled over the Road to two piggeries located on the Road for twenty-one years, and after they were transferred to Manchester in 1936 garbage has continued to be transported over the Road. The city of Beverly maintained a dump for a number of years on Horse Hill Lane, hauling the refuse over the Road. A substantial amount of gravel has been transported practically continuously over the Road since 1909 and up to the filing of the bill. At times during this period gravel was hauled from three pits on Horse Hill Lane, from two pits on the Road, and from a pit in Manchester. The pit on the Brady lot was opened in 1936. Brady commenced hauling gravel out of this pit in 1949 and transported an average of sixty loads a day and sometimes

one hundred loads a day. In 1949 gravel was transported from two pits on Horse Hill Lane at the rate of ninety loads a day. In the spring of 1951, one of these pits was in operation and two hundred loads a day were hauled over the Road. At times trucks having a capacity of five tons were used. The Road between Hart Street and Thissel's Corner has been considerably damaged by such heavy traffic and by the failure of the city of Beverly to renew the asphalt topping as it had done in former years.

One Clara E. Larcom on October 2, 1950, conveyed to Lorraine M. Brady two parcels of land, one on the northerly side and the other on the southerly side of the Road. After the description of the lot on the northerly side — which is the only one of these lots from which gravel is being transported over the Road — the deed states that the conveyance is made "With all the privileges and appurtenances to the same belonging." After the description of both parcels, the deed recited, "The above two parcels are conveyed together with any and all rights of way used and enjoyed by me and my predecessors in title in connection with the use of all the above described premises, subject to any existing rights of way to others if any there be." The master found that the right of way mentioned in this deed was the Road, and that the grantee acquired a right of way by grant, "for all purposes that a way may reasonably be used."

No other deed in the Brady chain of title was introduced in evidence. The deed conveyed whatever rights the grantor had in the Road, *Wishart* v. *McKnight*, 178 Mass. 356, *Robert* v. *O'Connell*, 269 Mass. 532, 536; but as against the owners of the fee in the Road that deed by itself did not create any new rights in the Road to Hart Street. *Knapp* v. *Reynolds*, 326 Mass. 737, 740–741.

The master found that during the last one hundred years the residents and landowners on the Road have used it as a way without limitation or restrictions, that at least for fifty years it has been used by the public the same as the public ways in the vicinity with which it connected, that such use has been open, adverse, uninterrupted, and con-

tinuous by the public, and that the Road had become a public way by prescription.

The plaintiffs contended before the master that the defendants had no right of way over the Road. It therefore became necessary to ascertain the history of the Road, the character and extent of its use, by whom it was used, the purposes for which it was used, and other circumstances tending to show what rights, if any, the defendants had to use the Road for the transportation of gravel from the Brady pit. The plaintiffs attacked the finding that the Road had become a public way by prescription on the ground that it was not supported by the evidence and requested and secured a summary of the evidence heard by the master on this issue. That summary furnished ample basis for the master's conclusion that the Road was a public way. *Commonwealth* v. *Coupe*, 128 Mass. 63, 64. *Bassett* v. *Harwich*, 180 Mass. 585. *Sullivan* v. *Worcester*, 232 Mass. 111. *Scott* v. *Worcester*, 257 Mass. 520. *White* v. *Boston Gear Works, Inc.* 315 Mass. 496, 499. The plaintiffs then filed an objection to the master's report, which became their first exception and which was to the effect that there was nothing in the pleadings which suggested that the defendants claimed a right of way by prescription or that the Road had become a public way. This exception was overruled. The plaintiffs now contend that, as it was alleged in the bill and admitted in the answer that the Road was a private way, the defendants were bound by this admission. This contention is sound. The first exception to the report ought to have been sustained and the finding must be disregarded so long as the present pleadings stand. *Bancroft* v. *Cook*, 264 Mass. 343, 348. *Adiletto* v. *Brockton Cut Sole Corp.* 322 Mass. 110, 112. *Rugo* v. *Rugo*, 325 Mass. 612, 618. Compare *Sullivan* v. *Fall River*, 144 Mass. 579.

Whether the way was a private or public way was apparently fully and fairly tried before the master, who expressly reported that the female defendant contended before him that she had a right of way by grant, by necessity and by prescription and that the Road is now "a public way by

prescription." A public way may be established by pre-
scription over a private way. *Weld* v. *Brooks*, 152 Mass.
297, 303, 305. *Siegemund* v. *Building Commissioner of
Boston*, 259 Mass. 329, 334. It would be strange if a way
shown to be a public way — a matter so notorious and of
such general public interest — must be determined to be a
private way because such an admission was made in the
answer of the defendants. The case is an appropriate one
for the allowance of an amendment to the answer setting
up that the Road has become a public way. *Seder* v. *Koz-
lowski*, 304 Mass. 367, 370. *New England Foundation Co.
Inc.* v. *Elliott & Watrous, Inc.* 306 Mass. 177, 181. *Tomp-
kins* v. *Sullivan*, 313 Mass. 459, 461. Upon the allowance of
such an amendment and an adjudication that the Road was
a public way, the plaintiffs would have no right to restrict
or prohibit the use or enjoyment of the Road by members
of the public for all purposes within the easement of public
travel, the regulation and control of which have been en-
trusted to certain public officers. See G. L. (Ter. Ed.)
c. 40, § 22; c. 85, § 10; *Robinson* v. *Brown*, 182 Mass. 266;
*Commonwealth* v. *Morrison*, 197 Mass. 199; *Centebar* v.
*Selectmen of Watertown*, 268 Mass. 121; *Opinion of the Jus-
tices*, 297 Mass. 559. See also *Wilbur* v. *Newton*, 301 Mass.
97.

All that is hereafter said depends upon the contingency
that the suggested amendment is not allowed and therefore
the case must be concluded upon the present pleadings and
the master's report if they are a sufficient basis for a de-
cision.

The finding that, for a century prior to the filing of the
bill, the residents and owners of land abutting the Road
have used it as a way without limitation or restriction, in
the absence of evidence heard by the master, cannot be set
aside, where, as here, that ultimate finding does not purport
to rest upon the subsidiary findings, none of which is incon-
sistent with the ultimate finding. That finding is binding
upon the trial judge and upon us. *Kasper* v. *H. P. Hood &
Sons, Inc.* 291 Mass. 24, 25. *VanBuskirk* v. *Diamond*, 316

Mass. 453, 459. *Sprague* v. *Rust Master Chemical Corp.*
320 Mass. 668, 675. *Cantor* v. *Cantor*, 325 Mass. 719, 722.

The burden was upon the defendants to show that they
had a right to haul sand and gravel from the Brady pit over
the Road to Hart Street. *Gadreault* v. *Hillman*, 317 Mass.
656, 661. *Tucker* v. *Poch*, 321 Mass. 321, 323. The measure
of the prescriptive right claimed to have been acquired by
the defendants depends upon the character, nature, and ex-
tent of the actual use made of the Road in conjunction with
the Brady lot during the period necessary to gain the right.
*Middlesex Co.* v. *Lowell*, 149 Mass. 509, 511. *Swensen* v.
*Marino*, 306 Mass. 582, 586. *Fortier* v. *H. P. Hood &
Sons, Inc.* 307 Mass. 292, 299. The master reports that the
gravel pit upon this lot was not opened until 1936. We do
not know what use of this lot was made prior to this date.
It may have been vacant land. A use commencing at that
date could not have ripened into a prescriptive right when
the bill was filed on June 5, 1951. Not a single definite use
of the Road in connection with these premises appears in the
master's report. But the female defendant had whatever
rights her predecessors in title had in the Road. The mas-
ter simply reports that they used the Road for any purposes
they desired without let or hindrance. The neighborhood
contained various gravel pits but the use of the way by
owners of other lots to transport gravel does not give the
female defendant any prescriptive right to do so. She must
establish such a right independent of them. There might
have been a pit in operation on the Brady premises prior to
the one opened up in 1936. Our difficulty is that, in the
absence of evidence before the master, we cannot say
whether his finding does or does not include the actual
transportation of sand and gravel from the Brady premises
or a similar use during the prescriptive period. The finding
is equally consistent with a situation where there may never
have been a single occasion, much less a continuous one, to
employ a vehicle to carry goods to or from the premises as
with a situation where vehicles were employed during the
prescriptive period in a manner substantially similar to

that now employed by the defendants in supplying the needs of the premises for the purposes for which they were then occupied. *Parks* v. *Bishop,* 120 Mass. 340, 341. *Abbott* v. *Mars,* 277 Mass. 122, 124. The finding is ambiguous, and is too indecisive a finding upon which to decide the issue. *Turgeon* v. *Turgeon,* 326 Mass. 384, 386. It would be unfair to the parties to attempt to do so. In these circumstances the case should be remanded to be further heard by the judge or recommitted to the master to make additional findings on the actual use made of the Road by the predecessors in title of the Brady premises prior to 1936, especially whether the Road was employed for the transportation of goods between these premises and Hart Street and, if so, the character, nature, and extent of such use. *Cutter* v. *Arlington Casket Co.* 255 Mass. 52, 57. *Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 224. *Medlinsky* v. *Premium Cut Beef Co.* 317 Mass. 25, 32. *Turgeon* v. *Turgeon,* 326 Mass. 384, 386.

It follows that, if the amendment to the answer is allowed, the interlocutory decree is affirmed, the final decree is reversed, and a final decree is to be entered dismissing the bill; otherwise, the final decree is reversed and so is the interlocutory decree confirming the master's report, the case is remanded to the Superior Court for further findings on the issue whether the female defendant has any prescriptive right to transport gravel over the Road between her premises and Hart Street and, if so, the extent of such right, the exceptions to the report, other than the first one which is to be sustained, may then be considered, and such interlocutory and final decrees are then to be entered as shall be required in the light of such additional findings.

*So ordered.*